# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 4, 2011        Decided March 15, 2011

No. 10-7040

FG HEMISPHERE ASSOCIATES, LLC,
APPELLEE

v.

DEMOCRATIC REPUBLIC OF CONGO,
APPELLANT

SOCIETE NATIONALE D'ELECTRICITE,
APPELLEE

———

Consolidated with 10-7046

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:03-cv-01315)

———

*Sharon Swingle*, Attorney, U.S. Department of Justice, argued the cause for *amicus curiae* United States for appellant. With her on the brief were *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, *Douglas N. Letter*, Attorney, and *Harold Hongju Koh*, Legal Adviser*, U.S. State Department.

*Jeremy C. Martin* argued the cause for appellant. On the briefs were *Stephen F. Malouf* and *Jonathan A. Nockels*.

*Eric A. Shumsky* argued the cause for appellee FG Hemisphere Associates, LLC. With him on the brief were *Bradford A. Berenson*, *James W. Coleman*, and *Angela M. Xenakis*. *Neil H. Koslowe* entered an appearance.

Before: GINSBURG and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the court filed by SILBERMAN, *Senior Circuit Judge*.

SILBERMAN, *Senior Circuit Judge*: This case, once pared down, is really less than meets the eye. To be sure, we encounter for the first time a contempt sanction imposed on a foreign sovereign in a proceeding brought under the Foreign Sovereign Immunities Act ("FSIA"). But there has been as yet no attempt to enforce the sanction (which could prove problematic).

FG Hemisphere's predecessor-in-interest (which we will refer to along with FG Hemisphere as "Hemisphere"), brought suit against the Democratic Republic of Congo ("DRC") under a provision of the FSIA permitting a plaintiff to confirm an arbitration award secured against a foreign sovereign. Following entry of a default judgment, and after the DRC began participating in the litigation, the district court sanctioned the DRC for failing to respond to court-ordered discovery. The DRC, supported by the United States as *amicus*, argues that such contempt sanctions are unavailable under the FSIA, and, in any event, are an abuse of discretion. We disagree.

I

In 1980, the DRC and its state-owned electric company entered into a credit agreement with Hemisphere to finance construction of an electric power transmission facility. The DRC failed to make the payments required of it under the agreement, and in 2003 Hemisphere began arbitration proceedings for those delinquent payments, obtaining two awards against the DRC. The DRC did not participate in arbitration.

Hemisphere sought judicial recognition of the arbitration awards against the DRC in 2004. Although foreign states are generally immune from the jurisdiction of U.S. courts, 28 U.S.C. § 1604, the FSIA contains several exceptions to this rule. One permits a plaintiff to bring suit against a sovereign "to confirm an award made pursuant to . . . an agreement to arbitrate," 28 U.S.C. § 1605(a)(6). Proceeding under this exception, Hemisphere sued the DRC. The DRC did not appear before the district court either to contest the court's jurisdiction or to litigate the merits of the arbitration award. Accordingly, the district court entered two default judgments against the DRC.

Hemisphere then sought to execute on the judgments. The FSIA limits the assets that are available to satisfy a judgment against a foreign sovereign. Where "the judgment is based on an order confirming an arbitration award," a plaintiff may only execute on "[t]he property in the United States of a foreign state . . . used for a commercial activity in the United States." *Id.* § 1610(a)(6). In 2005, Hemisphere propounded post-judgment discovery requests to identify the DRC's commercial property in the United States available for execution. The DRC, by now participating in the litigation, failed to respond to these discovery requests, and in 2006 the district court, with the consent of both parties, imposed a two-part discovery plan. In part one, the court required the DRC to turn over information regarding any real property it owned

located in the District of Columbia. In part two, the court required the DRC to provide information on any DRC assets valued over $10,000 and located outside the District of Columbia, both within the United States and in other countries where Hemisphere might seek to execute on its judgments.

The DRC never complied with part two of the discovery order. It produced only documents identifying real property within the District (which it claimed were immune from execution).[1] The district court concluded, therefore, that the DRC's responses "fell woefully short of compliance." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 603 F. Supp. 2d 1, 2 (D.D.C. 2009). In March 2009 – nearly three-and-one-half years after Hemisphere first sought discovery and two years after the court ordered the DRC to produce documents in response to part two of the court's discovery plan – the court, on Hemisphere's motion, found the DRC in civil contempt. It again ordered the DRC to comply with the outstanding discovery requests, and granted Hemisphere's request for fees

---

[1] These documents identified two properties that had housed DRC diplomatic officials until the mid-1990s, when political disruptions resulted in their removal from office, but not from the residences. The district court entered an execution order to enforce the judgment against these properties. Several months later, the DRC filed a motion to quash the execution order, arguing that its failure to respond earlier was due to "excusable neglect," and that the properties were immune from execution under the FSIA. The district court denied the motion; we reversed and remanded, explaining that the DRC had shown excusable neglect. *See FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 836 (D.C. Cir. 2006). We also suggested that the properties likely were not subject to execution. *See id.* at 843. Hemisphere decided not to seek enforcement of its judgments against these properties. Nevertheless, the DRC reproduced the documents identifying the diplomatic properties in response to part two of the discovery order – an obvious *non sequitur*.

and expenses resulting from the DRC's failure to comply with its discovery obligations.  The court gave the DRC thirty days to complete discovery, or to show cause why a fine payable to Hemisphere should not be imposed in the amount of $5,000 per week, doubling every four weeks until reaching a maximum of $80,000 per week, until DRC satisfied its discovery obligations. *Id.* at 2-3.

Before the sanctions began accruing, the DRC moved to vacate the contempt order, arguing that the FSIA does not authorize contempt sanctions against foreign sovereigns.  The DRC indicated that it had asked the United States to participate in the litigation and express its position on whether the district court may impose sanctions on a foreign sovereign.  The government, however, did not appear before the district court.  The court denied the DRC's motion a year later.  This appeal followed, in which the government (four years after the DRC's request) has filed an *amicus* brief supporting the DRC.

II

The DRC's brief here embraced the government's *amicus* brief filed in a Fifth Circuit case, *Af-Cap Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006), which presented a question similar to the one we consider here.  Thereafter, the government filed its *amicus* brief in this case, which closely follows its prior *amicus* brief.  We therefore must first parse the government's arguments – and that is no mean feat.  The government's position is quite confusing, conflating a contempt order imposing monetary sanctions with an order enforcing such an award through execution.  The government emphasizes that under the FSIA, a court is quite limited in *executing* a judgment against a foreign sovereign, and that no provision of the FSIA explicitly permits a plaintiff to execute on a sovereign's assets to enforce a contempt order.  It argues that since the district

court could not enforce its civil contempt order against the DRC, the court should not have issued it. It is unclear whether the government is contending that the district court lacked the *power* under the FSIA to issue the contempt order, or only that equitable considerations counsel restraint, or both.

In its appeal to equity, the government advances several considerations to illustrate why the contempt sanctions were improper. These range from the asserted unseemliness of a court ordering a contempt sanction it cannot enforce (and the supposed unnecessary severity of the sanctions), to principles of comity arising from both international practice and the government's international relations concerns. The government also raises another equitable issue, one not presented by the DRC to either the district court or to us on appeal: the discovery order is allegedly overbroad because it seeks discovery on DRC assets that are not available for execution under the FSIA.

Hemisphere responds that the district court has inherent authority to issue civil contempt orders to control proceedings – which neither the government nor the DRC really disputes – and that the FSIA does not restrict that authority. Then, and central to its argument, it contends that we do not have before us even a shadow of an enforcement question; the district court has not attempted to execute on its contempt order. Both the government and the DRC blithely ignore this last point. Finally, Hemisphere defends the district court's order as within the court's discretion because of the DRC's obdurate refusal to comply with the discovery order.

* * *

The FSIA is a rather unusual statute that explicitly contemplates that a court may have jurisdiction over an action against a foreign state and yet be unable to enforce its judgment

unless the foreign state holds certain kinds of property subject to execution.  *See De Letelier v. Republic of Chile*, 748 F.2d 790, 798-99 (2d Cir. 1984) (plaintiff may hold a right without a remedy under the FSIA).  Otherwise a plaintiff must rely on the government's diplomatic efforts, or a foreign sovereign's generosity, to satisfy a judgment.  Therefore, it is not anomalous to divide, as Hemisphere does, the question of a court's power to impose sanctions from the question of a court's ability to enforce that judgment through execution.   Hemisphere's contention that whether the court can enforce its contempt sanction is irrelevant to the availability of a contempt order is consistent with the statutory scheme.

\* \* \*

It is incontrovertible that federal courts enjoy inherent contempt power.  *See Spallone v. United States*, 493 U.S. 265, 276 (1990); *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 795 (1987); *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  That power runs with a court's jurisdiction, *see* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2960 (2d ed. 2010), and jurisdiction here is undeniable.  Although Congress can limit that authority, it must do so through a "clear and valid legislative command," *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946), a command that will not be "'lightly assume[d],'" *Chambers v. NASCO*, 501 U.S. 32, 47 (1991) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)).

As the Seventh Circuit has recognized, there is not a smidgen of indication in the text of the FSIA that Congress intended to limit a federal court's inherent contempt power.  *Autotech Techs. v. Integral Research & Dev.*, 499 F.3d 737, 744 (7th Cir. 2007).  Nor is there any legislative history supporting such a claim.    Indeed,  the  House  Report  to  the  FSIA

demonstrates that Congress kept in place a court's normal discovery apparatus in FSIA proceedings. *See* H.R. Rep. No. 94-1487, at 23 (1976) ("The bill does not attempt to deal with questions of discovery. Existing law appears to be adequate in this area."). And the same report illustrates that Congress specifically contemplated that contempt sanctions would be available under the FSIA as a remedy for discovery violations:

> [If] a private plaintiff sought the production of sensitive governmental documents of a foreign state, concepts of governmental privilege would apply. Or if a plaintiff sought to depose a diplomat in the United States or a high-ranking official of a foreign government, diplomatic and official immunity would apply. *However, appropriate remedies would be available under Rule 37, F.R. Civ. P., for an unjustifiable failure to make discovery*.

*Id.* (emphasis added); *see also* Fed. R. Civ. P. 37(b)(2)(A)(vii) (sanctions available for failure to abide by court-ordered discovery).

The government points only to the testimony of a State Department deputy legal advisor asserting that although the FSIA does not "explicitly preclud[e] a court from imposing a fine on a foreign state [for] failure to comply with a court order," the legislative history of the statute "suggests" that such sanctions would be unavailable. *Foreign Sovereign Immunities Act: Hearing on H.R. 1149, H.R. 1689, and H.R. 1888 Before the Subcomm. on Admin. Law and Government Relations of the H. Comm. on the Judiciary*, 100th Cong. 19 (1987), *reprinted in* 2 William H. Manz, *Foreign Sovereign Immunities Act of 1976*

*with Amendments: A Legislative History of Pub. L. No. 94-583* (2000). But this statement seems to us to be more a wish than an interpretation – the legislative history supports precisely the opposite proposition. Paradoxically, the deputy legal advisor took a different position a year earlier, urging Congress to limit the availability of contempt sanctions against foreign states. *See Arbitral Awards: Hearing on H.R. 3106, H.R. 3137, F.R. 4342, and H.R. 4592 Before the Subcomm. on Admin. Law and Government Relations of the H. Comm. on the Judiciary*, 99th Cong. 52 (1986), *reprinted in* 1 Manz, *supra*.

To be sure, the Fifth Circuit in *Af-Cap Inc.*, upon which the government and the DRC heavily rely, held that a contempt order requiring the Republic of Congo to pay money into the court's registry and send its business associates notice of an outstanding judgment was inconsistent with the FSIA. The court concluded that "[sections 1610 and 1611 of the FSIA] describe the available methods of attachment and execution against property of foreign states. Monetary sanctions are not included." *Af-Cap*, 462 F.3d at 428. Although the Seventh Circuit in *Autotech* distinguished *Af-Cap* on the grounds that the Fifth Circuit did not purport to decide the antecedent "power" question, i.e. whether the statute precluded the contempt order, *see Autotech Techs.*, 499 F.3d at 745, it does seem to us that the Fifth Circuit accepted the government's litigating effort to conflate the power to impose a contempt sanction with the authority to enforce it (as we noted, the government apparently filed a similarly confusing brief in that case). In any event, since the Fifth Circuit never considered the distinction between the two types of orders, we do not regard its decision as persuasive.[2]

---

[2] The government requests that we give deference to its conclusion that the FSIA does not permit a court to *enforce* a contempt sanction. But that is not the issue before us, and in any event, the request for deference is doctrinally unsound. Although the views of

We agree with the Seventh Circuit that contempt sanctions against a foreign sovereign are available under the FSIA.

## III

As we noted, both the DRC and the United States assert that principles of equity and comity demonstrate that the district court should not have imposed sanctions here. We review a district court's contempt finding and the imposed sanctions for abuse of discretion. *In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 818 (D.C. Cir. 2009).

The government's and the DRC's reasons for appealing to equitable discretion are rather insubstantial. The first – that a court should not issue an unenforceable order – simply quarrels implicitly with the statutory scheme, and therefore can be easily dismissed. The second is that the district court's contempt order was excessive, because it is more onerous than necessary to cure appellant's intransigence. We do not see how that argument can seriously be advanced in light of the DRC's continued intransigence. The suggestion that adverse evidentiary presumptions could be employed seems puerile because judgment has already been rendered. Perhaps even more nonsensical is the government's assertion that the district court should have ordered "targeted discovery" as a *sanction* for the DRC's contemptuous failure to respond to discovery.

Third, the government argues, more seriously, that the discovery order is overbroad because it seeks information on property that is not subject to attachment or execution under the FSIA – indeed it reaches property beyond the United States,

---

the United States on the meaning of FSIA "are of considerable interest . . ., they merit no special deference." *Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004).

outside of the district court's jurisdiction. We simply cannot entertain this argument because it was not raised before the district court in opposition to the contempt order and it was not even presented by the DRC before us; it was only raised in the government's *amicus* brief. Although, as we observe below, there might be unusual circumstances where the government could raise a new issue as *amicus* in the court of appeals, this is certainly not one of them. It would be patently unfair to Hemisphere, and disrespectful to the district judge, for us to entertain such an issue first in the court of appeals. *See Eldred v. Reno*, 239 F.3d 372, 378 (D.C. Cir. 2001).[3]

\* \* \*

We turn to the government's and the DRC's comity arguments based on international practice and, as a separate although related matter, the government's foreign relations concerns. Although it may be true, as the government contends, that at least several countries have explicitly prohibited monetary sanctions against a foreign state for refusal to comply with a court order, that seems quite irrelevant because our Congress has not. And we should bear in mind that our discovery process is extraordinarily extensive compared to that of most foreign legal systems. *See* Joseph W. Dellapenna, *Suing Foreign Governments and Their Corporations* 652-53 (2d ed. 2003)

The government also suggests that we should be concerned about the consequences of affirming the district court's order given possible reciprocal treatment of the United States in foreign courts. Although we often give consideration

---

[3] If the DRC were to comply with the discovery order regarding property in the United States, the district court might modify the contempt order.

to the government's assertion that a legal action involves sensitive diplomatic considerations, we only defer to these views if reasonably and specifically explained. *See Altmann*, 541 U.S. at 702. The government does not explain how the United States would be harmed if it were found in contempt under reciprocal circumstances. The broad, generic argument that the government offers here seems to us to be appropriately presented to Congress – not us. The government, moreover, did not present its foreign policy concerns to the district court. We do recognize that there could be circumstances in which particular pressing foreign policy concerns involving a defendant country could affect a court's decision, and those concerns, depending on their timing, could justify the government's presenting those matters first in an *amicus* brief in the court of appeals, but the government has not presented any such argument in this case.[4]

IV

We hold today only that the FSIA does not abrogate a court's inherent power to impose contempt sanctions on a foreign sovereign, and that the district court did not abuse its discretion in doing so here. The district court's order is

*Affirmed.*

---

[4] The DRC also opines that the contempt sanctions may be detrimental to the United States's relationship with the DRC. But the views of a party that is not the United States – even a foreign sovereign – on the effect of a particular legal action on United States foreign policy are not entitled to deference.