AXA VERSICHERUNG AG, Petitioner,

v.

NEW HAMPSHIRE INSURANCE CO., American Home Assurance Co., and National Union Fire Insurance Co. of Pittsburgh, Pennsylvania, Respondents.

No. 12 Civ. 6009(JSR).

United States District Court, S.D. New York.

April 22, 2013.

Joseph T. McCullough, IV, James J. Boland, Robin C. Dusek, Freeborn & Peters LLP, Chicago, IL, Sean Thomas Keely, Hogan Lovells US LLP, New York, NY, for Petitioner.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Petitioner AXA Versicherung AG ("AXAV") filed this action on August 6, 2012, against respondents New Hampshire Insurance Company, American Home Assurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (collectively, "AIG"), petitioning for confirmation of an arbitration award. On consent of the parties, this Court issued an order confirming the award on September 5, 2012, and final judgment was entered the following day. After judgment, AXAV served restraining notices on AIG seeking to secure payment of certain sums of interest on the award, which AXAV claims remain due but which AIG disputes. By letter brief, AIG now moves to quash the restraining notices. For the reasons that follow, that motion is hereby denied.

The pertinent facts are not in dispute. On July 27, 2012, an arbitration panel issued an award ordering AIG to pay AXAV approximately $10 million in compensatory damages and $1 million in punitive damages, plus interest, for claims related to certain reinsurance facilities between the parties dating back to 1998. The award provides that interest is to be calculated at "6.5% compounded annually due on the respective paid or unpaid balances ... through the date of payment/credit." Final Award at 14.

The award obligated AIG to make payment in full to AXAV within 30 days, i.e., by August 26, 2012. After AXAV submitted its interest calculations to AIG, AIG requested an extension of this deadline to review the calculations. As later memorialized in an email from AIG's counsel to the arbitration panel on August 27, 2012, AXAV agreed to the extension, upon condition that (1) AIG would not challenge the award and would stipulate to its confirmation by this Court and (2) "that interest at 6.5% as provided in the Final Award will continue to accrue until the amount is paid in full." AXAV Letter at 2 (quoting August 27, 2012 email). As agreed, the parties promptly filed a proposed order confirming the award with the Court, which the Court signed on September 5, 2012. Final judgment entered the next day.

After extensive discussions, the parties eventually reached agreement on the interest due under the award on October 12, 2012, on which date AIG purportedly wired all but $3,032 of the agreed amount to AXAV.[1] On October 18, 2012, however, AXAV informed AIG that it had not received the transferred funds. Upon investigation, AIG discovered and informed AXAV that the transfer had mistakenly been made, not to AXAV's account, but rather to a bank account belonging to a French affiliate of the AXA Group, AXA Re, now known as Colisee Re. In return, AXAV informed AIG that in 2006 Colisee Re's active business had been sold to a third party, now known as Partner Re, and that it was Partner Re that exercised day-to-day control over the account to which the funds had mistakenly been sent. After

---

1. AIG does not dispute that this $3,032 shortfall, which represents certain last-minute adjustments to the interest calculation, is due and owing to AXAV. See AIG Letter at 3 n. 2.

various delays and discussions among AIG, AXAV, Colisee Re, and Partner Re, the funds were eventually returned to AIG on November 20, 2012. That same day, AIG wired the returned funds to AXAV. The sum AIG wired on November 20, however, was the same sum it had attempted to wire on October 12, and thus did not include the $3,032 shortfall or any interest for the intervening period.

The instant dispute concerns the proper rate of interest due for the five-and-a-half-week period between October 12 and November 20. AIG contends that, at most, the statutory federal judgment rate set in 28 U.S.C. § 1961 should apply, and that, "in light of AXA[V]'s apparent unwillingness to assist in retrieving the funds from its corporate affiliate, and the fact that AIG only agreed to pay interest until the transfer, there [i]s good reason why no additional interest [i]s warranted." AIG Letter at 2. AXAV responds that AIG was to blame for the mistaken transfer and that, in any case, the proper interest rate is 6.5%, as AIG agreed and confirmed to the arbitration panel on August 27, 2012.

To secure payment based on that interest rate, AXAV, on January 23, 2013, served restraining notices on AIG pursuant to N.Y. CPLR § 5222 for $126,896. On January 29, 2013, AXAV also served AIG with subpoenas in connection with the restraining notices, seeking information regarding AIG's assets. AIG now moves to quash the restraining notices on the ground that the amounts they seek to secure are based on the wrong interest rate and thus are overstated.

▮ As a threshold matter, AXAV questions whether the Court possesses authority to grant the relief AIG requests. AIG points to N.Y. CPLR § 5240, which provides that a court "may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." AXAV responds that that provision is a state procedural rule, and therefore has no bearing on this proceeding in federal court.

But AXAV's conclusion does not follow from its premise. While N.Y. CPLR § 5240 is clearly a New York state procedural rule, Federal Rule of Civil Procedure 69 provides that "[t]he procedure on execution [of a federal judgment for money damages]—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." This proceeding to adjudicate the propriety of AXAV's effort to enforce this Court's judgment is unquestionably "supplementary to and in aid of judgment or execution."

Indeed, the Second Circuit has affirmed a district court order quashing in part certain restraining notices served under N.Y. CPLR § 5240. In *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70 (2d Cir.2002), the Ministry of Finance of the Republic of Indonesia moved to quash restraining notices served on a New York bank by Karaha Bodas, an energy company, in aid of execution upon a federal judgment confirming an arbitration award against Pertamina, an oil company owned by the Republic of Indonesia. *Id.* at 92. The Ministry argued that the funds in the restrained accounts in fact belonged to the Ministry, and not to Pertamina, the judgment debtor. The district court found that only five percent of the funds belonged to Pertamina, and allowed the restraining notices to remain only to that extent. *Id.* In affirming that ruling, the Second Circuit never suggested that that it was in any way improper for the district court to consider the Ministry's request. *Id.*

The Second Circuit's decision in *Milgram v. Orthopedic Associates Defined Contribution Pension Plan*, 666 F.3d 68 (2d Cir.2011), on which AXAV relies, is not to the contrary. The court there held that "C.P.L.R. 5239 and 5240 are state procedural rules; they provide no substantive rights and therefore have no relevance to this proceeding in federal court." *Id.* at 78. But unlike the movant in *Milgram*, AIG here does not rely on CPLR § 5240 as a source of "substantive rights," but rather simply as the procedural mechanism through which it may seek to vindicate its basic property rights in the assets restrained by AXAV's notices.

To the extent that AXAV challenges not just the procedure by which AIG seeks to quash the restraining notices but also this Court's very power to hear this dispute, such a challenge is easily answered. Jurisdiction to hear ancillary disputes relating to execution and enforcement of judgments is an inherent part of a court's jurisdiction over the underlying case. As the Second Circuit recently reiterated, "[p]rocess subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2d Cir.2012) (quoting *Riggs v. Johnson Cnty.*, 73 U.S. 166, 187, 6 Wall. 166, 18 L.Ed. 768 (1867)).

■ Turning to the merits, the parties here dispute, as mentioned, the proper interest rate to be applied for the period between October 12 and November 20, 2012. The relevant federal statute, 28 U.S.C. § 1961(a), provides that interest on "any money judgment in a civil case recovered in a district court" "shall be calculated" as provided in that section—*i.e.*, at the federal judgment rate. The Second Circuit has held that this statute applies equally to a federal judgment confirming an arbitration award, even if the award itself sets a different interest rate. *See Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir.1989) ("We ... conclude that a district court judgment affirming an arbitration award is governed by statutory post-judgment interest rates."). The Second Circuit has also made clear, however, that while Section 1961 "employs mandatory language, ... this is aimed mainly at precluding district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators, not at limiting the ability of private parties to set their own rates through contract." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101 (2d Cir.2004). Accordingly, parties may set a different postjudgment interest rate by contract, provided that they do so through "clear, unambiguous and unequivocal language." *Id.* at 102.

■ Here, the parties' principal dispute is over whether they have agreed to a nonstatutory postjudgment interest rate with the requisite clarity. AIG notes that in *Westinghouse*, the Second Circuit held that contractual language providing that "a 15.5 percent interest rate would be added to any arbitration award 'from the date payment was due to the date payment is made'" was insufficient to overcome the default statutory rate. *Id.* at 102. The court reasoned that the parties failed to indicate whether the 15.5% contractual interest rate would apply not only prejudgment but also postjudgment. *Id.* AIG argues that so too here the parties' agreement memorialized in the August 27 email failed to specify whether the agreed 6.5% interest rate would apply postjudgment.

*Westinghouse*, however, is distinguishable. There, the language setting a non-

statutory interest rate was part of an underlying commercial contract that the parties entered into long before initiating any arbitration or confirmation proceedings. *Id.* at 99. Here, by contrast, a contractual interest rate was set in an agreement reached after the arbitration had concluded and after confirmation proceedings had been filed. Indeed, the agreement directly related to the conduct of those confirmation proceedings and included a provision by which AIG agreed to stipulate to confirmation of the award, which AIG stated would occur "in the next few days." AXAV Letter at 2 (quoting August 27, 2012 email).

On AIG's reading of the parties' agreement, the agreed 6.5% interest rate would apply for only a few days until the award was confirmed. Given the full content and context of the agreement, that reading is manifestly contrary to the parties' intentions. The only fair reading of the agreement is that the parties intended the 6.5% contractual interest rate to apply post-judgment "until the amount is paid in full." *Id.*

That conclusion is confirmed by the parties' subsequent conduct. When the parties continued to negotiate the interest calculation after final judgment entered on September 6, AIG never took the position that the agreed 6.5% interest rate applied up until September 6 and no later. To the contrary, AIG has now paid AXAV interest at 6.5% up until October 12, and does not suggest that such payment was in error. Again, the parties' agreement requires interest to accrue at 6.5% "until the amount is paid in full"; on the basis of that agreement, there is simply no principled basis to conclude that a nonstatutory rate should somehow apply after judgment until October 12 but not beyond.

AIG also argues that AXAV should not be permitted to profit from the supposedly inexplicable delays in reversing its initial mistaken transfer. But AIG does not dispute that the initial transfer was made to an account owned by Colisee Re and Partner Re, that the error was AIG's alone, that the parties' agreement provides for interest to accrue until the award is "paid in full," or that the funds were in fact eventually returned. To be sure, it may well be that AIG's funds could have been returned more quickly. But AIG fails to explain how delays in unwinding a mistaken transfer to an account controlled by two third parties, only one of whom is even an affiliate of AXAV, somehow relieves AIG of its obligation to pay interest to AXAV as agreed.

The Court has no reason to doubt that AIG's error was an honest mistake made in the course of a good-faith attempt to pay the award and agreed interest in full. But a good-faith attempt is not the same as successful payment, and until AXAV received payment in full, it was entitled to interest at the agreed-upon rate. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) ("The purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." (internal quotation marks and brackets omitted)). To the extent AIG wished to avoid accruing additional interest in the meantime, it was free to make a second transfer to AXAV while it awaited the return of its funds from Colisee Re and Partner Re, which it failed to do.

Accordingly, for the foregoing reasons, AIG's motion to quash the restraining notices is hereby denied.

SO ORDERED.